COMMONWEALTH of Pennsylvania,
Appellees,

v.

Tony L. BENNETT, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 4, 2003.

Filed Feb. 4, 2004.

Mitchell S. Strutin, Philadelphia, for appellant.

Heather D. Young, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before: DEL SOLE, P.J., JOHNSON, HUDOCK, FORD ELLIOTT, JOYCE, STEVENS, MUSMANNO, TODD, and KLEIN, JJ.

TODD, J.

¶ 1 Tony Bennett appeals *nunc pro tunc* the February 19, 1999 order dismissing his first petition brought pursuant to the Post Conviction Relief Act ("PCRA").[1] Because we are constrained to conclude that his second PCRA petition—in response to which the PCRA court reinstated *nunc pro tunc* Bennett's appeal from the denial of his first PCRA petition, resulting in the present appeal—was untimely, we must quash this appeal.

¶ 2 There is no question that Tony Bennett was entitled to a new trial: the accomplice liability charge given at his murder trial was erroneous, and his codefendant at trial was granted a new trial on that basis. Further, it appears that due solely to the ineffectiveness of his various counsel, the erroneous jury charge was not objected to, no direct appeal was filed to raise the issue, and an appeal of a timely, but erroneously-denied, PCRA petition which raised the issue was dismissed for failure to file a brief.[2] In sum, no appellate court has yet addressed Bennett's meritorious claim, apparently due to the serial ineffectiveness of counsel. Bennett thus stands convicted of first-degree murder, and sentenced to life imprisonment, based on an erroneous accomplice liability charge, for a killing which occurred when his co-conspirators robbed a jewelry store while he waited in the getaway car. Nevertheless, given the stringent interpretation of the time-bar of the PCRA by our Supreme Court, we are powerless to address these obvious and cumulative errors, and may not sanction the relief granted in a second PCRA petition, one that is untimely and not now cognizable under Supreme Court precedent.

¶ 3 Bennett and four co-conspirators—Kevin Wyatt, Paul Johnson, Michael Mayo, and Kecia Ray—robbed a jewelry store in 1990. During the robbery, a salesperson was shot to death. Bennett supplied the gun, but did not enter the store and, instead, manned the getaway car along with Wyatt. Ray acted as a lookout, while Johnson and Mayo performed the robbery. Mayo fired the fatal shots. Ray and Mayo pled guilty to murder, while Bennett, Wyatt and Johnson were jointly tried for murder and related crimes in 1993. Bennett was represented at trial by Thomas Ciccone, Esquire. Following the jury trial, Bennett and his co-conspirators were convicted of first-degree murder, and Bennett was sentenced to life imprisonment. No direct appeal was filed, but Bennett filed a timely PCRA petition on April 6, 1995. Tariq Karim El–Shabazz, Esquire was appointed to represent Bennett and an amended petition was filed in 1997. The amended petition alleged, *inter alia,* that trial counsel was ineffective for failing to file a direct appeal and for failing to object to the accomplice liability charge given at trial.

¶ 4 After several continuances, the petition was denied without a hearing in 1999

---

1. 42 Pa.C.S.A. §§ 9541–46.

2. Although Bennett alleged that trial counsel was ineffective for failing to file a direct appeal, trial counsel was later appointed to prosecute Bennett's appeal of the dismissal of his first PCRA petition, which appeal, as we note, was dismissed for failure to file a brief.

because the trial court found that the allegations in the petition were insufficient to warrant relief. Bennett appealed the denial, and different, although not "new", counsel was appointed: Attorney Ciccone, who represented Bennett at trial, and who the PCRA petition alleged to have been ineffective, was directed to again represent Bennett in his appeal. Due to Attorney Ciccone's failure to file a brief, however, this Court dismissed that appeal "without prejudice" on August 14, 2000. Shortly after discovering that his appeal had been dismissed, in October 2000, Bennett filed *pro se* a second PCRA petition requesting reinstatement of his PCRA appellate rights *nunc pro tunc* due to counsel's abandonment of the prior appeal. In September 2001, this request was granted, new counsel was appointed, and before us now is Bennett's appeal of the dismissal of his first PCRA petition.

¶ 5 On appeal, he asks:

I.     Whether this Court has jurisdiction since the PCRA court properly reinstated the appellant's [appellate] rights and the Commonwealth has waived its jurisdictional argument.

II.     Whether the appellant is entitled to a new trial as a result of trial counsel's ineffectiveness [ ] for failing to request a mistrial since the prosecutor used his peremptory challenges to exclude African–Americans from the jury and for failing to renew his challenge to the prosecutor's actions and the ineffectiveness of post-trial motions, direct appeal and post-conviction counsel for failing to raise this issue.

III.     Whether the appellant is entitled to a new trial as a result of trial counsel's ineffectiveness for failing to request a mistrial after the Commonwealth failed to provide pretrial discovery of a letter that co-defendant Kevin Wyatt wrote to Commonwealth witness Kecia Ray and the ineffectiveness of post-trial motions, direct appeal and post-conviction counsel for failing to raise this issue.

IV.     Whether the appellant is entitled to a new trial as a result of trial counsel's ineffectiveness for failing to request a mistrial based upon the prosecutorial misconduct and the ineffectiveness of post-trial motions, direct appeal and post-conviction counsel for failing to raise this issue.

V.     Whether the appellant is entitled to a new trial as a result of trial counsel's ineffectiveness for failing to request the trial court to instruct the jury that the Commonwealth was required to prove that the appellant acted with the specific intent to kill to convict him of murder of the first degree and the ineffectiveness of post-trial motions, direct appeal and post-conviction counsel for failing to raise this issue.

VI.     Whether the appellant is entitled to a new trial as a result of the trial court's denial of a motion for mistrial after testimony was presented identifying the appellant in a co-defendant's redacted statement and the ineffectiveness of post-trial motions, direct appeal and post-conviction counsel for failing to raise this issue.

VII.     Whether the appellant is entitled to a new trial as a result of trial counsel's ineffectiveness for falling to object to the trial court's jury instruction that allowed a letter written by co-defendant Kevin Wyatt to be considered as substantive evidence against the appellant and the ineffectiveness of post-trial motions, direct appeal and post-conviction counsel for failing to raise this issue.

(Appellant's Brief at 5.)

¶ 6 Given our disposition of this appeal, however, we do not reach its merits. We note, though, at least regarding

Bennett's challenge to the accomplice liability charge given at trial—Issue # 5—that there is no doubt that there is merit to this claim. Wyatt, Bennett's co-defendant at trial, also was convicted of first-degree murder and later filed a PCRA petition alleging, *inter alia*, that the accomplice liability charge given at the trial was defective. In Wyatt's appeal from the denial of PCRA relief, we concluded that the charge, indeed, was erroneous, that counsel was ineffective for failing to object to it, and, accordingly, we vacated his first-degree murder conviction and remanded for a new trial. *Commonwealth v. Wyatt*, 2050 EDA 1999, 782 A.2d 1061 (Pa.Super. filed July 16, 2001) (unpublished memorandum). Given that they were tried jointly, there is no question that Bennett is entitled to relief on the same basis.

¶ 7 Nevertheless, we may not grant a new trial to Bennett, as, under our Supreme Court's recent and clarifying pronouncements regarding the strict and absolute time limits for filings under the PCRA, Bennett's second PCRA petition was untimely. The PCRA court was thus without jurisdiction to grant any relief, including its grant of *nunc pro tunc* restoration of Bennett's PCRA appellate rights, which resulted in the present appeal. As a result, we are constrained to conclude that this Court is without jurisdiction to hear this appeal.

¶ 8 The PCRA provides the exclusive vehicle for obtaining collateral relief on claims which are cognizable under the PCRA, including claims for *nunc pro tunc*

reinstatement of appellate rights. *See Commonwealth v. Eller*, 569 Pa. 622, 807 A.2d 838 (2002). Under 42 Pa.C.S.A. § 9545, as amended in 1995, any PCRA petition, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final. Bennett's judgment of sentence became final in 1993 when the appeal period expired following the entry of his judgment of sentence. His first PCRA petition was timely, however, as it was filed before the 1995 amendments.[3] To the contrary, Bennett's second PCRA petition requesting *nunc pro tunc* relief, filed after the 1995 amendments, was untimely on its face. Indeed, in August 2000, when this Court dismissed without prejudice Bennett's appeal from the denial of his first PCRA petition, he was by then ineligible to file a subsequent PCRA petition.[4] While the PCRA provides for three exceptions to the one-year time-bar, *see* 42 Pa. C.S.A. § 9545(b)(1), Bennett has neither pled nor shown the applicability of any of these exceptions.

¶ 9 Because Bennett's second PCRA petition was untimely filed and not subject to any of the enumerated exceptions to the time-bar, under Supreme Court precedent declaring the time limitations of the PCRA to be mandatory and jurisdictional in nature, the PCRA court was without jurisdiction to grant any relief, and this Court is, as a result, without jurisdiction to hear the resulting appeal. *See, e.g., Commonwealth v. Pursell*, 561 Pa. 214, 219, 749 A.2d 911, 913–14 (2000) (timeliness requirements of

3. Prior to the 1995 amendments to the PCRA, which became effective on January 16, 1996, there was no strict time limit for filing PCRA petitions.

4. Although the 1995 PCRA amendments provided for a statutory grace period of one year applicable to first petitions in cases where the judgment of sentence became final before the

January 16, 1996 effective date of the amendments, and where the PCRA petition was filed no later than January 16, 1997, *see Commonwealth v. Fenati*, 561 Pa. 106, 109, 748 A.2d 205, 206–07 (2000), this grace period is not available to subsequent PCRA petitions. Thus, Bennett could not have filed a second petition under the 1995 amendments.

the PCRA are jurisdictional in nature, and the courts lack jurisdiction to grant PCRA relief unless the petitioner can plead and prove that one of the exceptions to the time bar applies); *Commonwealth v. Murray*, 562 Pa. 1, 5, 753 A.2d 201, 203 (2000) ("given the fact that the PCRA's timeliness requirements are mandatory and jurisdictional in nature, no court may properly disregard or alter them in order to reach the merits of the claims raised in a PCRA petition that is filed in an untimely manner").

■ ¶ 10 The argument for making an equitable exception to the PCRA time-bar in this case is strong. Indeed, given that it appears that Bennett has been denied appellate review of a clearly meritorious issue and reversible trial court error leading to a murder conviction, the case for granting an equitable exception could hardly be stronger. Notwithstanding this, however, we are cognizant that our Supreme Court has rejected every attempt by this Court to circumvent the time-bar in the interest of justice, including equitable exceptions, *see Commonwealth v. Fahy*, 558 Pa. 313, 737 A.2d 214, 222 (1999) (PCRA "jurisdictional time limitation is not subject to equitable principles such as tolling"), or by treating untimely subsequent PCRA petitions as amendments or extensions of earlier timely petitions, *see Commonwealth v. Rienzi*, 573 Pa. 503, 827 A.2d 369 (2003) (this Court erred in attempting to treat untimely second PCRA petition as if it were amendment to timely, but withdrawn, first petition). The Supreme Court has repeatedly, and most recently quite emphatically, foreclosed such avenues.

¶ 11 In *Commonwealth v. Robinson*, —— Pa. ——, 837 A.2d 1157 (2003), the Supreme Court addressed the strict and absolute jurisdictional nature of the time-bar in the PCRA. The Court began by review-ing its rejection of various attempts by this Court to circumvent the often harsh effects of the jurisdictional nature of the time-bar:

In the past several years, this Court has weighed in upon the validity of various theories devised to avoid the effects of the one-year time limitation which was adopted as part of the 1995 amendments to the [PCRA]. *See, e.g., Commonwealth v. Baroni*, [573 Pa. 589] 827 A.2d 419 (Pa.2003) (claim of structural error does not surmount PCRA time limitation); *Commonwealth v. Rienzi*, [573 Pa. 503] 827 A.2d 369 (Pa.2003) (Superior Court erred in attempting to circumvent PCRA time-bar by treating untimely, second PCRA petition as if it were amendment to timely but withdrawn first petition); *Commonwealth v. Eller*, 569 Pa. 622, 807 A.2d 838 (2002) (PCRA petitioner cannot pursue reinstatement of direct appeal rights *nunc pro tunc* outside framework of PCRA; disapproving of Superior Court decisions holding to contrary on basis of misplaced retroactivity analysis); *Commonwealth v. Hall*, 565 Pa. 92, 771 A.2d 1232 (2001) (PCRA petitioner cannot pursue reinstatement of direct appeal rights *nunc pro tunc* outside framework of PCRA); *Commonwealth v. Murray*, 562 Pa. 1, 753 A.2d 201, 202 (2000) (rejecting claim that applicability of PCRA's time-bar depends on nature of constitutional violations alleged in petition; "given the fact that the PCRA's timeliness requirements are mandatory and jurisdictional in nature, no court may properly disregard or alter them in order to reach the merits of the claims raised in a PCRA petition that is filed in an untimely manner"); *Commonwealth v. Fahy*, 558 Pa. 313, 737 A.2d 214, 222 (1999) (PCRA "jurisdictional time limitation is not subject to equitable principles such as tolling").

*Id.* at 1157–58. The Court in *Robinson* further sealed shut the door to such circumventions, and in so doing, emphatically admonished this Court's "tinkering" with the jurisdictional mandate of the PCRA.

¶ 12 Robinson was convicted of voluntary manslaughter and related offenses and sentenced to 7½ to 15 years imprisonment. He did not file an appeal, but timely filed a *pro* se PCRA petition. Counsel was appointed, the petition was dismissed, and Robinson appealed that dismissal to this Court. As in the instant case, however, this Court dismissed the appeal "without prejudice" when counsel failed to file a brief on Robinson's behalf. Robinson later filed several untimely PCRA petitions, the last one seeking restoration of his PCRA appellate rights *nunc pro tunc.* The PCRA court apparently concluded that prior counsel was ineffective for earlier failing to file a brief on Robinson's behalf and granted relief. On appeal to this Court,[5] because the PCRA petition resulting in the restoration of Robinson's PCRA appellate rights *nunc pro tunc* was untimely, we first addressed the jurisdictional issue. As Robinson's untimely PCRA petition sought, *inter alia,* restoration of his appeal from the previously-dismissed timely PCRA petition, we concluded that the present petition should have been viewed as an extension of his timely first petition, and thus not subject to the PCRA's time-bar. *Id.* at 1160. The Commonwealth appealed to the Supreme Court, which firmly rejected our approach.

¶ 13 Referring to *Rienzi, Hall, Eller,* and *Fahy, supra,* the Supreme Court reiterated that the PCRA timeliness requirements are mandatory and jurisdictional in nature, and do not support this Court's "extension" theory:

Since neither the language of the statute nor this Court's decisional law authorizes suspension of the time-bar in instances where the petitioner is seeking *nunc pro tunc* appellate relief or reiterating claims which were litigated on a previous petition, the statute obviously cannot bear Superior Court's interpretation.

*Id.* at 1161–62. The Court emphasized that this approach ignored "bedrock principles of finality," *id.* at 1162, explaining:

By operation of law, [the PCRA court's] order denying relief on the merits of the first petition became final thirty days after the Superior Court dismissed the appeal. Neither [the PCRA court] nor the Superior Court retained any sort of residual jurisdiction to tinker with that final judgment. Instead, the only way for appellee to secure further collateral review of the claims he would now raise was via the PCRA, which provides the **exclusive** vehicle for obtaining state collateral relief on claims which are cognizable under the PCRA. *Eller,* 807 A.2d at 842–43; *Hall,* 771 A.2d at 1235–36; *Commonwealth v. Lantzy,* 558 Pa. 214, 736 A.2d 564, 569–70 (1999). Since the jurisdiction of the court system over the prior PCRA petition had expired, appellee's subsequent petitions were entirely new collateral actions and, as such, they were subject to the time and serial petition restrictions of Section 9545(b) of the PCRA.

*Id.* (emphasis original).

¶ 14 The Court further held that this Court's notation in dismissing the appeal of Robinson's first PCRA petition "without prejudice" was ineffectual to alter the finality of our dismissal, in the absence of an actual mandate remanding the case, or the retention of jurisdiction. *Id.* Referring to

---

**5.** Although Robinson's appeal was filed one week late, this Court had overlooked this deficiency, finding that it resulted from an "administrative breakdown". *Id.* at 1159.

the deleterious effect of our dismissal under the circumstances of the case, the Court cautioned:

If the Superior Court had (and still has) a concern with the effect of its administrative orders in light of the greater restriction represented by the time-bar, the answer is not to seek to circumvent the statute but, perhaps, to revisit (if it has not done so already) the administrative practice. As the Commonwealth notes, the Superior Court could take other measures when faced with a PCRA petitioner's lawyer's failure to file a brief on an appeal from the denial of a timely, first PCRA petition. For example, the court could in fact remand the first PCRA petition for a hearing on counsel's failure and the advisability of sanctioning counsel or appointing new counsel; or, the court could issue a rule to show cause upon appellate counsel to explain his reasons for flouting the court's briefing order. But, we cannot sanction the indulgence of a fiction which is obviously designed to simply circumvent the statutory time-bar.

*Id.* at 1162–63.[6]

¶ 15 In the instant case, Bennett appealed the denial of relief of his first timely PCRA petition. This Court dismissed his appeal "without prejudice" when Bennett's counsel failed to file a brief. That decision became final 30 days later, when Bennett failed to appeal the dismissal. Under *Robinson*, it is clear that this Court's dismissal "without preju-

dice" in August 2002 was ineffectual to prevent the dismissal of his PCRA petition from becoming final. *See Robinson*, 837 A.2d at 1162. Further, at that point, the time period for Bennett to file a subsequent PCRA petition had long passed.[7] His second PCRA petition, which resulted in the present appeal, was therefore untimely.[8] As a result, the PCRA Court lacked jurisdiction to grant *nunc pro tunc* relief, and, accordingly, this Court is now without jurisdiction to address his claims. *See id.* at 1163.

¶ 16 Given our Supreme Court's repeated pronouncements that the PCRA is the exclusive remedy for claims cognizable under the Act, and that its time limitations are jurisdictional, subject to no equitable or other exceptions but those provided in the Act, we are in the unenviable position of denying relief where there is no doubt that justice requires such relief. Although we recognize that Bennett is entitled to a new trial on the same basis as the one ordered for his co-defendant at trial, we may not grant such relief, as it is clear that under the PCRA, the petition seeking such relief was untimely. Importantly, the untimeliness was not due, it appears, to any act, intention, or negligence on the part of Bennett. Rather, Bennett's right to relief was lost due to the serial ineffectiveness of counsel. Moreover, as we have noted, inexplicably, Bennett's trial counsel, who Bennett alleged was ineffective for failing to file a direct appeal, is the same

---

6. As we discuss below, this Court has altered the administrative practice critiqued by the Supreme Court in *Robinson*.

7. *See supra* notes 3 and 4 and accompanying text.

8. The Supreme Court has held that, where an *uncounseled* PCRA petition is dismissed or withdrawn prior to the appointment of counsel, a subsequent PCRA petition may not be

treated as an untimely second petition. *Commonwealth. v. Tedford*, 566 Pa. 457, 781 A.2d 1167 (2001); *Commonwealth v. Williams*, 573 Pa. 613, 629, 828 A.2d 981, 990 (2003). We cannot find that this case falls into the ambit of *Tedford* or *Williams*, however, as here Bennett was represented by counsel (albeit allegedly ineffectively) when his first timely petition was filed and dismissed, and when this Court dismissed his appeal.

counsel who was appointed to represent Bennett in his appeal from the denial of PCRA relief, which appeal was dismissed for counsel's failure to file a brief.

¶ 17 The ineffectiveness of counsel was compounded, unintentionally but nonetheless gravely, by the actions of this Court. This Court has subsequently altered our administrative practice of dismissing PCRA appeals when appellant's counsel fails to file a brief, and now retains jurisdiction in such cases and remands the matter to the trial court for appropriate investigation and action, a procedure suggested in *Robinson*, 837 A.2d at 1162–63. In the instant case, however, we followed our prior practice and did not retain jurisdiction of Bennett's appeal. When we dismissed his appeal for counsel's failure to file a brief, at that point, further PCRA relief was no longer available to him.[9] Our choice of disposition was fully outside of Bennett's control, of course, and this Court having failed to preserve jurisdiction, Bennett's remaining avenue for relief was foreclosed.

¶ 18 In *Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638 (1998), our Supreme Court first held that the PCRA time-bar was jurisdictional. *Id.* at 554, 722 A.2d at 641. The Court's decisions since then, culminating recently in *Robinson, supra*, have, it seems, necessarily followed from that initial conclusion that the PCRA time-bar was jurisdictional in nature, and not

akin to a statute of limitations which could allow for equitable considerations. The inability to consider equitable concerns has led inexorably to the point, of which we believe this case to be an example, where the resulting injustice becomes one of constitutional magnitude. There is a legitimate argument that, under the circumstances of this case, Bennett's constitutional right to appeal, his right to effective counsel, or his right to a writ of *habeas corpus* has been unconstitutionally thwarted by the PCRA time limitations.[10] Recognizing, however, that our Supreme Court has held that the time limitations of the PCRA are constitutional, *see Peterkin*, 554 Pa. at 557–58, 722 A.2d at 642–43 (PCRA time limitations are constitutionally reasonable; they do not "unreasonably or unconstitutionally limit [appellant's] constitutional right to habeas corpus relief"), we must leave to our high Court's prerogative the decision whether to review the constitutional dimensions of Bennett's deprivations.

¶ 19 For the foregoing reasons, we are without jurisdiction to hear the present appeal, and are, as a result, constrained to quash it.

¶ 20 Appeal **QUASHED**.

¶ 21 STEVENS, J. files a Concurring Statement to which KLEIN, J. joins.

¶ 22 KLEIN, J. files a Concurring Statement.

---

9. Bennett could have appealed this Court's dismissal of his appeal to the Supreme Court. It is unclear, however, on what basis such an appeal would have been founded.

10. At least in the context of petitions for stay of execution, which must be brought under the PCRA, the Supreme Court has contemplated that, under some circumstances, the PCRA filing restrictions may be unconstitutional as applied to a particular defendant, where such application of the PCRA results in a violation of that defendant's constitutional

rights. *See Commonwealth v. Morris*, 565 Pa. 1, 771 A.2d 721, 734 n. 14, 735 n. 16 (2001) (noting that circumstances may arise, such as failing to have adequate time to review a petition seeking a stay of execution under 42 Pa.C.S.A. § 9545(c), or failing to have the petition "pending" before the court, where application of the requirements for seeking a stay of execution under § 9545(c) may be unconstitutional); *Commonwealth v. Morris*, 573 Pa. 157, 169, 822 A.2d 684, 691 (2003) (same).

STEVENS, J., Concurring.

¶ 1 I agree with the conclusion of the Majority that Appellant's second PCRA petition was untimely and that the appeal must be quashed. However, I do not believe the Majority should address the merits concluding that Appellant "...has been denied appellate review of a clearly meritorious and reversible trial court error leading to a murder conviction..." Majority p. 957. Rather, I would merely state the conclusion of this Court in quashing the appeal, limit the Majority opinion to analysis of that particular issue and I would not offer gratuitous comments on the merits of the issues nor on the alleged ineffectiveness of trial counsel.

KLEIN, J., Concurring.

¶ 1 I agree with the majority that the second PCRA petition was untimely and Bennett did not plead nor show the applicability of any of the three exceptions to the one-year time bar. I believe that under 42 Pa.C.S.A. § 9545(b)(ii), a defendant has 60 days to file a new PCRA from the time he ascertains or reasonably should have ascertained "the facts" that no brief was filed. However, Bennett did not allege that he knew that no brief was filed within 60 days of the time he filed his PCRA petition.

¶ 2 I recognize that the 60–day time factor often may be too short, since the defendant usually does not have a lawyer when he first discovers the problem. In this case, our decision well might trigger a federal *habeas corpus* petition. Be it because of legislation, rules or court decisions, waiver of issues has become more prevalent. However, waiver prevents a review of the basic questions: did the parties receive a fair trial and did the trial court follow the law? Also, a considerable amount of effort is devoted to determining if issues have been waived, when it would

be more efficient in some cases to decide the substantive issue. This is particularly true in criminal cases where waiver might lead to a PCRA. However, the majority cited the applicable cases and I agree that we are bound.

¶ 3 I also agree with the majority that our altered administrative practice when no brief is filed to retain jurisdiction and remand to the trial court is a better practice than merely dismissing the appeal.

¶ 4 However, I differ with the majority when it says so clearly that trial counsel was ineffective for failing to object to the erroneous charge by the trial judge. Without being in the courtroom and being in counsel's shoes, it is hard to understand the reasons behind counsel's actions. Therefore, I do not think it wise to brand trial counsel as "ineffective" without giving him or her a chance to explain any strategic reason for what was done. There may be many reasons known to trial counsel but not clear from the record that could provide a reasonable explanation.

¶ 5 For example, this is not a case where the death penalty was being sought. Since the defendant could have been held to be an accomplice to the robbery, he could have been found guilty of second-degree murder as an accomplice and been subject to the same life sentence. *See Commonwealth v. Prosdocimo*, 525 Pa. 147, 578 A.2d 1273 (1990). The trial lawyer might have preferred a confusing charge rather than having the law more clearly laid out and making it easier for Bennett to be convicted of second degree murder. We should give the lawyer a chance to explain before imposing the stigma of the label of ineffectiveness.